NO. COA13-542

NORTH CAROLINA COURT OF APPEALS

Filed:  21 January 2014

CAROL YEAGER,
     Plaintiff,

     v.                          Mecklenburg County
                                 No. 08 CVD 10504
GEORGE YEAGER,
     Defendant.


Appeal by plaintiff from orders entered 26 November 2012 by Judge Christy T. Mann in Mecklenburg County Superior Court.  Heard in the Court of Appeals 8 October 2013.

> *Aylward Family Law, by Ilonka Aylward, for plaintiff-appellant.*
>
> *Leonard G. Kornberg for defendant-appellee.*


McCULLOUGH, Judge.

Plaintiff appeals from two contempt orders.  Based on the reasons set forth below, we dismiss plaintiff's appeal as moot and impose sanctions based on this frivolous appeal.

## I.    Background

Plaintiff Carol Yeager and defendant George Yeager were married in 1972 and separated in 2007.  On 6 May 2008, plaintiff filed a complaint against defendant for post-separation support, alimony, interim distribution, equitable distribution, and

attorneys' fees. On 12 June 2008, defendant filed an answer and counterclaim for equitable distribution.

Following a hearing held in August 2008, the trial court entered an "Order and Judgment" on 12 September 2008. The trial court found, in pertinent part, that plaintiff was the sole manager of NG Holdings, LLC, a marital asset. NG Holdings, LLC, owned a warehouse located at 440 Springbrook Road (hereinafter the "warehouse"), which produced rental income. The parties' former marital residence, titled in plaintiff's name, was located at 422 Livingston Drive in Charlotte, North Carolina (hereinafter the "marital residence"). The 12 September 2008 order awarded plaintiff post-separation support, ordered defendant to pay plaintiff's attorneys fees, and ordered for plaintiff to receive rental income from the warehouse.

On 29 January 2010, defendant filed a "Motion to Appoint a Receiver Order, Interim Distribution and Judicial Assistance."

On 25 June 2010 *nunc pro tunc* 30 November 2010, the trial court entered a "Motion to Appoint a Receiver Order [sic], Interim Distribution and Judicial Assistance." (hereinafter "the Receiver Order"). The trial court made the following pertinent findings of fact in the Receiver Order:

> 3. . . . The major assets of the parties are two tracts of real property each worth approximately $300,000. Prior to the parties

separation neither property was encumbered with any lien whatsoever. . . .

4. Initially the Plaintiff took out two lines of credit in [an] amount under $100,000 on the marital residence. The Plaintiff paid off one line of credit but the other line of credit remains in an unknown amount.

5. The marital residence was owned by a trust setup by the parties for "asset protection reasons." The trustee for the Trust . . . deeded this property solely to the Plaintiff without the knowledge or consent of the Defendant. . . .

6. The other piece of real property [is the warehouse]. [The warehouse] was devised to the Defendant solely after the previous owner, his father [passed] away. This property was deeded to a corporation and the Plaintiff was the sole stockholder of the corporation[.]

7. By happenstance, the Defendant learned that the Plaintiff has executed two deeds of trust in September 2009, one for each tract of personal property. Each deed of trust was in the amount of $300,000. . . . These deeds of trusts were executed by the Plaintiff and were given to a corporation in Nevada. The corporation in Nevada was established on or about the same time the Deeds of trust were executed. During a prior hearing the Plaintiff testified that she signed a promissory note for each deed of trust and an unsigned promissory not[e] was offered by her during the last hearing in this matter.

8. The incorporator and the president is a paralegal in Nevada who owns a company who is a registered agent for many corporations in Nevada. There is no evidence that this corporation is anything other th[a]n [a] holder of the deeds of trust and was established solely for that purpose.

9. Although the Plaintiff did not appear in this matter, the Court remembers her reasons for having to execute the deeds of trust. Her testimony was that a trust in Virginia had been paying the utility bills on the residence and the Deed of trust was meant to secure these utilities payments.

10. The Plaintiff could not offer any documents for this alleged trust in Virginia but a letter was offered by the Plaintiff . . . which "explained" this transaction and the trustee of this trust to whom the deeds were executed on behalf[.]

11. When the above facts were established in Court, Plaintiff's counsel indicated he was taking immediate action to attempt to undo or reform the Deeds of Trust; These deeds of trust undoubtedly complicate this case and the parties estate and it is necessary to take any possible action to unravel the above transactions and put the properties back into the hands of the parties.

12. Since the time of the prior action, Plaintiff['s] previous counsel has withdrawn and no action has been taken to undo the Deeds of trust or to unravel the web of trusts and corporations.

The trial court further found that plaintiff's rationale for entering into these deeds was not credible and that it did not believe the deeds of trust were for "a legitimate purpose but because of the nature of these documents cannot void these deeds without the appropriate legal process." Based on the foregoing, the trial court believed "it is in the best interest of the marital estate to handle the financial matters regarding the [warehouse]."

The trial court appointed a receiver to investigate and take all necessary steps to remove both deeds of trust from the marital residence and the warehouse (hereinafter "the properties") and ordered plaintiff to "not take any other action as it relates to either proper[ty and] to in anyway further encumber either piece of real property[.]"

On 13 December 2010, the trial court entered an "Order Clarifying and Amending Appointment of Receiver/Referee." This order restated and incorporated by reference the findings of fact and conclusions of law in the Receiver Order. The trial court found that "[t]he Court needs the assistance of the Receiver/Referee in investigating the transactions related to two parcels of real property that have impacted the value of the marital estate, so that the Court can engage in its statutory responsibilities in Equitable Distribution between the parties herein." It further specified that the receiver shall have powers contemplated in Rule 53 of North Carolina Rules of Civil Procedure, without limitation, for conducting the investigation:

> Receiver/Referee . . . is conferred with all powers that the Court may vest pursuant to the North Carolina General Statutes and North Carolina Rules of Civil Procedure, to take any and all necessary legal actions to assist the Court, as it relates to these two parcels of property, to cure any defects in the titles thereto, so that the Court can properly and equitably distribute same as the law would

require.

On 7 June 2011, defendant filed a "Motion for Contempt," alleging that plaintiff was violating the Receiver order. Defendant alleged that plaintiff was using the line of credit encumbering the marital residence, thereby increasing the outstanding debt, and was refusing to comply with the requests of the receiver.

On 21 June 2011, plaintiff, through her attorney Ilonka Aylward, filed a "Declaratory Judgment Action to Quiet Title" to the properties.

On 28 July 2011, defendant filed another "Motion for Contempt," alleging that plaintiff had filed the 21 June 2011 action to quiet title to the properties in direct contravention of the receiver's orders. Defendant alleged that the receiver had expressly told both "[p]laintiff and her counsel . . . that they were not to file Lawsuit to reform the Deeds of Trust which Plaintiff executed encumbering the party's marital property."

On 8 August 2011, the trial court entered a "Show Cause Order," ordering plaintiff to appear in court on 16 August 2011 and "to show cause, if any there be, why Plaintiff should not be adjudged in willful contempt of this Court."

On 16 August 2011, the trial court held a hearing upon defendant's motion for contempt. The receiver testified that he

informed Ms. Aylward, plaintiff's counsel, via e-mail, "do not file the action to quiet title." However, Ms. Aylward "made it clear to everyone that she planned to proceed with the action to quiet title even though she had been directly, or I had directed her not to file for a number of reasons." At the conclusion of the hearing, the trial court orally found the following:

> [Trial Court]: Okay. Alright, I find that Ms. Yeager is in contempt of Court for filing the lawsuit in direct contradiction of what the court appointed Referee and Receiver said. I don't know how much clearer it can be, do not file the action, do not file the action.

In the written order, signed on 9 November 2012 and filed on 26 November 2012, the trial court made the following findings of fact:

> 1. This Court previously entered [the Receiver Order] (which remains in full force and effect) that provided, among other things, neither party would further encumber any assets (particularly the 2 pieces of real estate) that are the subject of both parties' claims for equitable distribution.
>
> 2. After the entry of that Order the Plaintiff drew money out of an equity line that was secured by the former marital residence. The Plaintiff freely admitted that she had used this money to pay for her own expenses, including attorney's fees.
>
> 3. The Plaintiff increased the amount of money owed on the equity line in direct violation of the Court's previous Order.
>
> 4. The Plaintiff's actions in borrowing money

and increasing the balance due on the equity line further encumbered the former marital residence. The Plaintiff's actions were willful and without justification.

5. The Plaintiff has had and continues to have the ability to comply with the Order.

The trial court ordered that plaintiff "shall not use the equity line or further encumber any assets that are the subject of this litigation."

On 4 April 2012, the trial court held a hearing upon defendant's motion to hold plaintiff in contempt. At the conclusion of the hearing, the trial court orally made the following findings:

despite [the Receiver] [O]rder prohibiting further encumbrances, Plaintiff admitted that she, in fact, wrote checks off of the equity line thereby increasing the amount owed and secured by the property.
The Plaintiff continued to write checks on the line of credit, received monies and increased the amount owed on the equity line up to the date of the filing of the contempt motion.
Plaintiff's actions of further encumbering the property was willful. I find her in contempt; order her to abide by all terms and conditions of the order; to not write anymore checks on the equity line[.]

. . . .

My previous order of the court Todd Owens, appointed referee, giving him authority among other things, resolve the issue of the encumbrances; to establish what encumbrances of any were on the real property pursuant to

North Carolina Rules of the Civil Procedure 53.

> The referee has authority to file such lawsuits as he thinks necessary and appropriate. Mr. Owens instructing [plaintiff] not to file a lawsuit in Superior Court regarding an action [to] quiet title in this very property that is the subject of the case.

> In despite of this, [plaintiff] filed a Superior Court action regarding the property that is the subject matter of this case. Records specifically instructed [plaintiff] to not file this lawsuit but she filed it in direct contradiction of the direct instructions.

> [Plaintiff's] action to file the Superior Court lawsuit was willful and a direct violation of the previous order of the court. I find her in contempt[.]

The trial court's written order, signed on 9 November 2012 and filed on 26 November 2012, made the following findings of fact:

1. On June 25, 2010 this Court previously entered [the Receiver Order] (which remains in full force and effect) that provided, among other things, N Todd Owen was appointed as Receiver/Referee of certain real estate which was the subject of both parties' claims for equitable distribution. The [Receiver] Order was later clarified in an order dated December 13, 2010. The [Receiver Order] was appealed; however, this appealed [sic] was dismissed by the North Carolina Court of Appeals.

2. Both of the aforementioned orders gave the Receiver/Referee broad powers to investigate the various claims of certain 3rd parties which purported to place liens against the real estate that is the subject of the equitable distribution claims. The orders also gave the Receiver/Referee the

> power to take the steps necessary to "quiet" the titles to both parcels.
>
> 3. The Receiver/Referee instructed both parties to NOT file any additional claims regarding these 2 parcels of real estate. The Plaintiff filed a Superior Court lawsuit to "quiet" title after being instructed numerous times to not do so.
>
> 4. The Plaintiff's actions in filing the Superior Court lawsuit was a direct violation of the Court's [Order] and was willful and without justification.
>
> 5. The Plaintiff has had and continues to have the ability to comply with the Order.

Furthermore, plaintiff was ordered to not file any other legal actions regarding the two real estate parcels.

On 13 December 2011 *nunc pro tunc* 1 December 2011, the trial court entered an "Order Dissolving Receivership and Relieving Court Appointed Receiver/Referee." This order found that on 16 August 2011, the receiver caused Satisfactions of Security Instruments to be recorded with the Mecklenburg Register of Deeds to terminate the post-complaint encumbrances on the properties. The trial court also found that the receiver had concluded the investigation and rendered a detailed report and ordered the receivership to be dissolved.

On 5 June 2012, the trial court entered an Equitable Distribution Order distributing the marital residence to plaintiff

and holding, *inter alia*, that the warehouse is the separate property of defendant.

On 20 December 2012, plaintiff appealed from both of the trial court's orders holding her in contempt.

## II.  Standard of Review

"The standard of review for contempt proceedings is limited to determining whether there is competent evidence to support the findings of fact and whether the findings support the conclusions of law."  *Sharpe v. Nobles*, 127 N.C. App. 705, 709, 493 S.E.2d 288, 291 (1997) (citation omitted).

## III. Discussion

On appeal, plaintiff argues that there is insufficient evidence in the record to support both contempt orders entered by the trial court.  Plaintiff also maintains that both contempt orders are fatally defective for the following reasons: that the trial court erred by finding that the Receiver Order "remains in full force and effect"; that the contempt orders contained permanent injunctions but failed to meet the statutory requirements of Rule 56; and that the contempt orders failed to contain adequate findings of fact.

> At the outset we note that contempt in
> this jurisdiction may be of two kinds, civil
> or criminal, although we have stated that the
> demarcation between the two may be hazy at
> best.  Criminal contempt is generally applied

> where the judgment is in punishment of an act already accomplished, tending to interfere with the administration of justice.

*O'Briant v. O'Briant*, 313 N.C. 432, 434, 329 S.E.2d 370, 372 (1985) (citations omitted). "[C]ivil contempt, . . ., is employed to coerce disobedient [parties] into complying with orders of court." *Ruth v. Ruth*, 158 N.C. App. 123, 126, 579 S.E.2d 909, 912 (2003) (citation omitted).

Guided by these principles, we conclude that plaintiff's failure to abide by the Receiver Order constituted civil contempt.

> To hold a [party] in civil contempt, the trial court must find the following: (1) the order remains in force, (2) the purpose of the order may still be served by compliance, (3) the non-compliance was willful, and (4) the non-complying party is able to comply with the order or is able to take reasonable measures to comply.

*Shippen v. Shippen*, 204 N.C. App. 188, 190, 693 S.E.2d 240, 243 (2010) (citation omitted).

In the case *sub judice*, although plaintiff challenges the sufficiency of the evidence in the record and the findings made by the trial court to uphold the contempt orders, we initially consider defendant's contention that this appeal is moot in light of the fact that the receivership established by the Receiver Order was dissolved on 13 December 2011 and the properties were distributed through the 5 June 2012 Equitable Distribution Order.

"When events occur during the pendency of an appeal which cause the underlying controversy to cease to exist, this Court properly refuses to entertain the cause merely to adjudicate abstract propositions of law." *In re Hatley*, 291 N.C. 693, 694, 231 S.E.2d 633, 634 (1977) (citation omitted). "A case is 'moot' when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy. [A]n appeal presenting a question which has become moot will be dismissed." *Swanson v. Herschel*, 174 N.C. App. 803, 805, 622 S.E.2d 159, 160 (2005) (citations omitted).

In *Smithwick v. Frame*, 62 N.C. App. 387, 303 S.E.2d 217 (1983), the plaintiff filed a motion for civil contempt against the defendants for failure to comply with an order awarding temporary custody of the minor child to plaintiff and failure to comply with a consent order providing primary custody of the minor child with the defendants, subject to temporary custody and visitation rights in the plaintiff. The trial court entered an order finding the defendants in contempt but reserving punishment of the defendants until final disposition of the child custody matter. *Id.* at 391, 303 S.E.2d at 220. Subsequently, the trial court entered an order disposing of the child custody matter and electing not to punish the defendants for contempt. The defendants appealed, arguing that the trial court lacked jurisdiction to

consider the issue of contempt. *Id.* Our Court held that because the defendants "suffered no injury or prejudice as a result of the contempt order, their [arguments] are moot and will not be considered by us." *Id.*

Here, plaintiff was found in contempt for willfully failing to comply with the Receiver Order by drawing money out of an equity line secured by the marital residence and by filing an action to quiet title to the properties. However, the trial court did not impose any consequence or penalty for plaintiff's contempt. Similar to *Smithwick*, plaintiff did not suffer an injury or prejudice as a result of the contempt orders. In addition, the order dissolving the receivership and the equitable distribution order distributing the properties has left "the underlying controversy to cease to exist." *Hatley*, 291 N.C. at 694, 231 S.E.2d at 634 (citation omitted). Based on the foregoing, we hold that any determination we might make in this appeal concerning the contempt orders would not have any practical effect, and therefore, plaintiff's arguments are moot. Accordingly, we dismiss plaintiff's appeal.

Moreover, we note two recent interrelated cases from our Court that involved the same parties and counsel. Our Court filed an unpublished opinion on 2 July 2013, affirming an order of the trial court awarding defendant $4,605.00 in attorney's fees as a sanction

against plaintiff for seeking the issuance of a mandamus petition by our Court. *Yeager v. Yeager*, __ N.C. App. __, 748 S.E.2d 774 (2013) (unpublished). Our Court observed that during the pendency of that appeal, the parties had filed eleven motions and other requests for relief and stated the following:

> [a]s should be apparent from the unusual length of the list of motions and other requests for relief that the parties have asserted before this Court during the pendency of the present appeal, the parties have expended considerable time and effort complaining about each other's conduct and seeking redress from the Court for allegedly unprofessional or legally unsupported actions on the part of their opponents. Although the various remedies available under the North Carolina Rules of Appellate Procedure exist for a reason and although members of the bar do have an obligation to provide their clients with zealous representation, we take the liberty of pointing out that "scorched earth" litigation tactics, while sometimes emotionally satisfying to attorneys or their clients, are often counterproductive, particularly in family law matters; have the potential to substantially increase the complexity and cost of the litigation process; and increase the burdens placed upon both the trial and appellate judiciary.

*Id.* at __, 748 S.E.2d at __. More importantly, we point out that our Court warned counsel, which included Ilonka Aylward of Aylward Family law, the following: "we urge counsel to seriously consider the merits and potential demerits of the manner in which this case

has been litigated to this point as they attempt to resolve any matters which remain at issue between the parties." *Id.*

Subsequently, in an unpublished opinion filed 6 August 2013 also involving the same parties and counsel, our Court affirmed the trial court's dismissal of plaintiff's complaint for declaratory judgment and to quiet title to the properties. *Yeager v. Yeager*, __ N.C. App. __, 746 S.E.2d 427 (2013) (unpublished). Our Court noted that

> [c]ontinuously since 6 May 2008, when plaintiff filed a complaint for alimony, equitable distribution, and attorney's fees against defendant, the parties have been engaged in a course of incessant litigation in several interrelated lawsuits in Mecklenburg County which have thus far resulted in numerous court orders addressing various issues including interim distribution, appointment of a receiver, contempt, sanctions, equitable distribution, and no less than eleven appeals to this Court, excluding the many petitions filed with this Court.
>
> . . . .
>
> This litigation has been particularly rancorous. . . .

*Id.* at __, 746 S.E.2d at 428.

Based on our conclusion above that plaintiff's arguments challenging the contempt orders are moot, we conclude that plaintiff's present appeal was taken frivolously, as it was "not well grounded in fact and was not warranted by existing law or a

good faith argument for the extension, modification, or reversal of existing law" pursuant to Rule 34(a) of the North Carolina Rules of Appellate Procedure. N.C. R. App. P. 34(a)(1) (2013). In light of the extensive history of litigation between the parties, we must also conclude that this appeal was taken for an "improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation[.]" N.C. R. App. P. 34(a)(2). Therefore, we determine that sanctions are warranted and order that plaintiff and her attorney pay the costs and reasonable expenses, including reasonable attorney fees, incurred by defendant because of this frivolous appeal. N.C. R. App. P. 34(b)(2). Pursuant to Rule 34(c), we remand this case to the trial court for a hearing to determine defendant's costs and expenses. N.C. R. App. P. 34(c).

Dismissed and remanded.

Judges McGEE and DILLON concur.